UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HENRY COX,

                              Plaintiff,

          v.                                              9:23-CV-0057
                                                          (GLS/CFH)
(DOCCS) NYS DEPARTMENT OF
CORRECTIONS et al.,

                              Defendants.

_____

APPEARANCES:

HENRY COX
Plaintiff, pro se
08-B-1418
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

GARY L. SHARPE
Senior United States District Judge

## DECISION AND ORDER

### I.     INTRODUCTION

          Plaintiff Henry Cox commenced this action by filing a pro se civil rights complaint

pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application for leave to

proceed in forma pauperis (IFP).  Dkt. No. 1 ("Compl."); Dkt. No. 4 ("IFP Application").[1]  By

Decision and Order entered on March 6, 2023, plaintiff's IFP Application was granted, but

following review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b),

_____

          [1]  By Order entered on January 20, 2023, plaintiff's initial application to proceed IFP was denied as
incomplete and the action was administratively closed.  Dkt. No. 3.  Thereafter, plaintiff filed his IFP Application
and the inmate authorization form required in this District, and the Clerk was directed to reopen this action and
restore it to the Court's active docket.  See Dkt. Nos. 4, 5, 6.

plaintiff's Section 1983 claims were dismissed without prejudice for failure to state a claim upon which relief may be granted.  Dkt. No. 7 ("March 2023 Order").  In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint.  *Id*. at 11-12.

Presently before the Court is plaintiff's amended complaint.  Dkt. No. 9 ("Am. Compl.").

## II.   SUFFICIENCY OF THE AMENDED COMPLAINT

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  The legal standard governing the review of a pleading pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) was discussed at length in the March 2023 Order and will not be restated herein.  *See* March 2023 Order at 2-4.

### A.   The Complaint and March 2023 Order

In his original complaint, plaintiff asserted claims against "(DOCCS) Department of Corrections & Community Services"[2] based on the following matters: (1) the current strip frisk and pat frisk policies throughout DOCCS, which plaintiff claims are "humiliating"; (2) the health and safety risks associated with serving inmates "quick chill" meals, which have "been known to cause long term illnesses attached to cancers and other stomic [sic] illnesses," and "soy-bean," which is no longer served at women's prisons because it is "unhealthy"; (3) the policy of restraining inmates in handcuffs and shackles during bus transports, which is "super unsafe" because the busses also do not have seatbelts; (4) the lack of adequate training and educational programs available to inmates for "rehabilitation and growth and development";

---

[2]  In the amended complaint, plaintiff names "(DOCCS) NYS Department of Corrections" as a defendant. Am. Compl.  The court construes the amended complaint to name the New York State Department of Corrections and Community Supervision as the intended defendant.

(5) obstacles that inmates face relative to recreation time and law library and tablet access; and (6) the limited space in, and layout of, prison cells and the adjoining "gallery."  Compl. at 3-15.

Before reviewing the sufficiency of the allegations pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court denied plaintiff's request for class certification based on his failure to file a proper motion seeking certification of a proposed class that demonstrates that the requirements of Rule 23 of the Federal Rules of Civil Procedure have been satisfied.  *See* March 2023 Order at 5-6.  The Court then analyzed the sufficiency of plaintiff's individual capacity claims, dismissed his Section 1983 claims for monetary relief against DOCCS pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as barred by the Eleventh Amendment, and dismissed his Section 1983 claims for prospective injunctive relief for failure to state a claim upon which relief may be granted.  *Id*. at 6-11.

### B.      Overview of the Amended Complaint

As with the original complaint, plaintiff's amended complaint raises challenges to various DOCCS policies and practices.  *See generally* Am. Compl.  The amended complaint also asserts claims based on plaintiff's medical treatment, and under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. ("Rehabilitation Act"), and names several officials as defendants, in addition to DOCCS.  *Id*.  The following new facts are set forth as alleged in the amended complaint.

### 1. Search Policies

Plaintiff is a sexual assault survivor who suffers from "mental depression" because of this experience.  Am. Compl. at 2.  The strip frisk policy within DOCCS for female incarcerated individuals requires that they "squat and spread" "after being striped [sic]

3

naked." *Id.*  Conversely, males are "told naked to turn around, bend at the waist, and spread their buttocks" and then "lift [their] penis and balls." *Id.* at 2-3.  The pat frisk policy also allows officials to pat incarcerated males "near the . . . genitals [and] buttocks." *Id.* at 3.  However, incarcerated males are required as part of a search to spread their legs and bend at a forty-five degree angle with their hands placed on a wall.  *Id.* at 4.  This renders subsequent touching near the genitalia or buttocks unnecessary.  *Id.*

The aforementioned search policies and practices have caused plaintiff to suffer "anxiety" and "depression."  Am. Compl. at 3.  The following officials are responsible for these policies, all of whom are named as defendants: Philip Batitiste, DOCCS Director of Security; Thomas Loughren and Allen Riley, Commissioners for the New York State Commission of Correction; Frances Sullivan, Policy and Complaint Review; James O'Gorman, Commissioner of Facility Operations; and Anthony Annucci, DOCCS Commissioner.  *Id.* at 1, 3.

### 2. Quick Chill and Soy Bean Meals

"[S]tudies" by certain research groups have revealed that cooking food items in a plastic container causes long term health and safety risks.  Am. Compl. at 4.  The DOCCS "food protection policy . . . allows quick chill" meals to be served to incarcerated individuals. *Id.*  In addition, with respect to soy bean meals, because incarcerated females are no longer provided with these meals, men should not be either.  *Id.* at 5.

### 3. Bus Transportation

DOCCS has a policy whereby incarcerated people are ankle-shackled to other inmates during bus transports, and wear a chain around their waist, which is attached to a weight box.  Am. Compl. at 6.  These individuals are also not secured by a seatbelt during

the ride.  *Id.*  The transport policy presents an increased safety risk to incarcerated individuals, and results in "long term scars" and wrist cuts from the shackling.  *Id.*  At some unidentified point in time, as a result of this policy, plaintiff "sustained injuries."  *Id.* at 7.

### 4. Rehabilitation

Plaintiff suffers from mental health issues as a result of his placement in restrictive confinement at unidentified points in time during his incarceration.  Am. Compl. at 7.  DOCCS officials have "disregarded plaintiff['s] mental illness" and "ignored test scores" showing that he is in need of educational services.  *Id.*

Defendant Cathy Sheehan is "responsible" for the "RRU signed into law . . . through the Halt Act."  Am. Compl. at 8.  Despite this new law, there have been "problem[s]" with incarcerated individuals receiving the rehabilitation services to which they are entitled.  *Id.*  For example, law library tablets are often not provided on time, plaintiff only receives phone privileges every three days for two hours, as opposed to once a day for three hours, and he and other inmates are required to "stand on the gate" while eating breakfast to "cat[c]h the list and go to programs."  *Id.*  Inmates in general population also spend approximately eighteen hours each day in their cells, and are forced to live in "close quarters" with others, which further deprives these individuals of needed rehabilitation services and opportunities. *Id.* at 9.

### 5. Mental Health Treatment and Services

Plaintiff has been "diagnosed with PTSD, depressive disorders, and ADHD."  Am. Compl. at 11.  Plaintiff "has received mental health assistance since the age of 11" and is "part of DOCCS mental health case load."  *Id.*  The "mental health assistance" plaintiff receives is "non-exsistant [sic] to very limited."  *Id.*  Plaintiff has not "yet received any

counseling [sic] in regards to PTSD, DD, or ADHD outside [of] medication," and the failure to address these conditions has resulted in plaintiff struggling to adjust to incarceration and "get[ting] into a lot of trouble." *Id.* Plaintiff has spent "over 9 years out of the 15 years" of his incarceration in a special housing unit, and "almost a year more in RRU." *Id.*

The passage of the HALT ACT is an acknowledgment that "solitary confinement causes further mental health problem[s] that could lead to suicid[e] and or further problems adjusting" to prison life. Am. Compl. at 11.

### 6. Issues with Medication

At some unidentified point during his incarceration, plaintiff was prescribed "a drug that he knew nothing about." Am. Compl. at 11. "The medication he received left him distorted and unable to move or understand anything." *Id.* Although plaintiff "ask[ed] to be taken off [the medication] [and] showed a willingness for wanting assistance," he was not given any or prescribed different medication. *Id.* at 11-12.

Defendant John Culkin, the DOCCS Director of Mental Health Services, "is responsible for [the] statewide policy dealing with mental health." Am. Compl. at 12. As recently as a "few months ago," plaintiff experienced "hart [sic] problems," which has been an ongoing issue throughout his incarceration. *Id.* at 12-13. However, plaintiff had to wait a day to receive medical evaluation, and did not see a doctor for two weeks or receive "any testing for a month." *Id.* at 13. "The delay caused [plaintiff] pain and discomfort." *Id.*

Plaintiff also "has a long history of back problems" and has been previously prescribed a "back brace," without any further treatment to address his pain. Am. Compl. at 13. Defendant Dr. John Morley is the DOCCS Chief Medical Officer and is responsible for creating the policies and practices that have deprived plaintiff of adequate treatment for his

6

pain. *Id.*

### 7. Plaintiff's Claims

In addition to the aforementioned officials, the amended complaint also names the following individuals as defendants: Stephen Brandow, Commissioner for Administration; Jeff McKoy, Commissioner for Program Services; and Linda Hollmen, Director of Education.  Am. Compl. at 1.

Liberally construed, the amended complaint asserts the following claims against DOCCS and the named defendants: (1) Fourth Amendment unlawful search claims based on the DOCCS strip and pat frisk policies and practices; (2) Eighth Amendment sexual abuse claims based on the DOCCS strip and pat frisk policies and practices; (3) Fourteenth Amendment equal protection claims based on the DOCCS strip and pat frisk policies and practices; (4) Eighth Amendment claims based on plaintiff's receipt of quickfill and soy bean meals; (5) Fourteenth Amendment equal protection claims based on plaintiff's receipt of quickfill and soy bean meals; (6) Eighth Amendment failure-to-protect claims based on the DOCCS policy of restraining inmates in handcuffs and shackles during bus transports; (7) claims under Title II of the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. (ADA) and the Rehabilitation Act claim based on the failure by DOCCS officials to accommodate plaintiff's mental health, educational, and programming needs, and delays associated with plaintiff's access to tablet and telephone privileges; and (8) Eighth Amendment claims based on plaintiff's receipt of inadequate medical and mental health treatment.[3]

---

[3] With respect to plaintiff's allegations of alleged delays in accessing law library tablet and telephone privileges, the amended complaint fails to explain when plaintiff experienced such delays, or identify any officials who may have been personally involved in plaintiff not receiving these privileges on time.  Furthermore, plaintiff does not allege that he was altogether denied all forms of communication with the outside world at any point. Thus, the Court does not construe the amended complaint to assert a cognizable Section 1983 claim against any

For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

### C.    Nature of the Action

Plaintiff has not submitted a motion with his amended complaint seeking certification of a proposed class.  Accordingly, and for the reasons stated in the March 2023 Order, this action is considered only as an action brought by plaintiff in his individual capacity.

### D.    Analysis

#### 1.  Eleventh Amendment Immunity

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568

---

named defendant based on the alleged delays plaintiff experienced in accessing phone and tablet privileges. *See, e.g.*, *Martinez v. Healey*, No. 14-CV-302, 2014 WL 5090056, at *3 (S.D.N.Y. Oct. 10, 2014) (noting that "inmates have no right to unlimited telephone calls" and that "phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel" (alteration and internal quotation marks omitted)); *Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at *5 (S.D.N.Y. Mar. 8, 2012) ("Because inmates have no right to unlimited telephone calls, [the plaintiff] must, but fails to, allege that he was stripped of alternate methods of communication to state a violation of his constitutional rights" (alterations, citation, and internal quotation marks omitted)); *Henry v. Davis*, No. 10-CV-7575, 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel."), *report and recommendation adopted by* 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011).

F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's amended complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

As noted in the March 2023 Order, the Eleventh Amendment bars suits for money damages against DOCCS.  *See* March 2023 Order at 6-7.  The Eleventh Amendment also bars suits for damages against state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.").

Accordingly, insofar as plaintiff seeks monetary damages under Section 1983 against DOCCS or any defendant in his or her official capacity, such claims are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as barred by the Eleventh

Amendment.[4]

### 2.  Section 1983 Claims Based on DOCCS Strip and Pat Frisk Policies

As far as the Court can tell, plaintiff seeks changes to DOCCS strip and pat frisk policies to effectively (1) end the requirement that incarcerated males face officials while naked at the outset of a strip search and squat in a manner that allows their genitalia and buttocks to be examined, and (2) prevent DOCCS officials from touching any area near a male inmate's genitalia or buttocks after that individual has "spread and squat[.]"  Am. Compl. at 2.  Plaintiff appears to seek this accommodation at a minimum for sexual assault survivors such as himself.  *Id*.  Plaintiff further alleges that DOCCS has a "spread and squat" policy for incarcerated females, which he believes eliminates the justification for the search policies imposed on incarcerated males.  *Id*. at 2-3.

### a.  Fourth Amendment Legal Standard

More than forty years ago, the Supreme Court upheld the practice of conducting visual body-cavity searches of pre-trial detainees following contact visits, finding that the Fourth Amendment does not require probable cause for corrections officials to conduct such searches; instead, such searches are subject to a reasonableness standard.  *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979); *see also Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510, 1516 (2012) (holding that arrestees who are committed to the general population of a

---

[4]  In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. N.Y. State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

detention center may be subject to a close visual inspection while undressed).  The Second

Circuit and district courts within the Circuit have also upheld routine random strip searches,

including body-cavity inspections, performed on prison inmates.  *See Covino v. Patrissi*, 967

F.2d 73, 76-80 (2d Cir. 1992); *see also Hurley v. Ward*, 584 F.2d 609, 612 (2d Cir. 1978)

(reversing portion of injunction prohibiting strip searches of prison inmates); *Castro-Sanchez

v. N.Y. State Dep't of Corr. Servs*., No. 10-CV-8314, 2011 WL 6057837, at *9 (S.D.N.Y. Dec.

6, 2011) ("Routine random strip searches of inmates, including body cavity inspections, do

not violate the Fourth Amendment.").  Assessing the reasonableness of a strip search

"requires a balancing of the need for the particular search against the invasion of personal

rights that the search entails.  Courts must consider the scope of the particular intrusion, the

manner in which it is conducted, the justification for initiating it, and the place in which it is

conducted."  *Bell*, 441 U.S. at 559.

      An inmate bears the burden of showing that a search was unreasonable, *see Shabazz

v. Pico*, 994 F. Supp. 460, 473 (S.D.N.Y. 1998), so, at the pleading stage, a plaintiff must

"plead facts sufficient to give rise to a plausible inference" that the search he challenges was

unreasonable under the aforementioned standards, *Simmons v. Cripps*, No. 12-CV-1061,

2013 WL 1290268, at *21 (S.D.N.Y. Feb. 15, 2013), *report and recommendation adopted by*

2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013).

### b.  Eighth Amendment Legal Standard

      "A claim of cruel and unusual punishment in violation of the Eighth Amendment has

two components—one subjective, focusing on the defendant's motive for his conduct, and

the other objective, focusing on the conduct's effect."  *Wright v. Goord*, 554 F.3d 255, 268

(2d Cir. 2009); *see Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) ("To state an

Eighth Amendment claim, a prisoner must allege two elements, one subjective and one

objective.").  "[P]rison officials looking for contraband may subject inmates to reasonable strip

searches and cavity searches," and, "[i]ndeed[,] prison security and safety may require

frequent searches of an intensely personal nature." *Crawford*, 796 F.3d at 258 (citing *Bell*,

441 U.S. at 560).  Thus, "[w]hen . . . alleged misconduct arises in the context of a legitimate

penological search, a plaintiff may . . . be unable to satisfy the subjective prong, as the

defendant performed the conduct at issue in 'a good-faith effort to maintain or restore

discipline' rather than to 'maliciously and sadistically . . . cause harm.'" *Haywood v. Annucci*,

No. 18-CV-10913, 2022 WL 4357648, at *11 (S.D.N.Y. Sept. 20, 2022) (quoting *Hudson v.

McMillian*, 503 U.S. 1, 7 (1992)).  For that reason, "[i]n determining whether a prison official

has violated an inmate's Eighth Amendment rights by committing a sexual assault during a

search, 'the principal inquiry is whether the contact is incidental to legitimate official duties,

such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse

or gratify the officer or humiliate the inmate.'" *Torres v. City of New York*, No. 17-CV-6604,

2019 WL 7602181, at *9 (S.D.N.Y. Aug. 14, 2019) (quoting *Crawford*, 796 F.3d at 258),

*report and recommendation adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019).

### c. Fourteenth Amendment Legal Standard

The Equal Protection Clause requires that the government treat all similarly situated

people alike.  *See City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985).

Specifically, the Equal Protection Clause "bars the government from selective adverse

treatment of individuals compared with other similarly situated individuals if 'such selective

treatment was based on impermissible considerations such as race, religion, intent to inhibit

or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  To state a viable claim for denial of equal protection as a member of an identifiable class, a plaintiff generally must allege "purposeful discrimination . . . directed at [the] identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).

### d.  Inadequacy of the Pleading

As an initial matter, insofar as plaintiff challenges DOCCS pat frisk procedures based on allegations that they allow for unwanted contact with genitalia, as noted in the March 2023 Order, "Section IV.B of Directive 4910 expressly prohibits '[s]taff' from 'lift[ing] or otherwise manipulat[ing] the genitalia during a pat frisk.'"  March 2023 Order at 8-9.  Thus, plaintiff's claim that pat frisks carried out in accordance with DOCCS Directive 4910 are unconstitutional once again fails as a matter of law.

Insofar as plaintiff challenges differences between DOCCS strip frisk procedures for incarcerated males and females, the directive only contemplates a different strip frisk procedure for incarcerated males and females because of their anatomy differences, and even then, the difference is not as plaintiff alleges.  Rather, Section IV.E.1 of DOCCS Directive 4910 expressly states as follows:

> A strip frisk means a search of an incarcerated individual's clothes and body, including a visual inspection of body cavities.  For a male, this involves one or more of the following procedures: a mouth search*, running his hands through his hair, allowing his ears to be visually examined**, lifting his arms to expose his armpits, lifting his testicles to expose the area behind his testicles, and bending over and spreading his buttocks to expose his anus to the frisking Officer***. For females, the procedures are similar except females must also squat to expose the vagina.

13

NY DOCCS, Directive No. 4910, *available at* https://doccs.ny.gov/system/files/documents/ 2022/08/4910.pdf (last visited May 1, 2023).

The Directive further states that "[w]hen conducting a strip frisk, visual inspection of the anal cavity shall be accomplished by having the incarcerated individual bend over and spread the buttocks.  For purposes of visual inspection of the vagina, female incarcerated individuals shall squat and spread their legs."  Section IV.G.3.  In other words, the DOCCS search policies contemplate both male and female incarcerated individuals being subjected to visual examinations of private areas of their bodies when deemed necessary.  Thus, plaintiff's conclusory allegation that DOCCS applies a different strip search policy for incarcerated males and females is not enough to state an equal protection claim.  *See, e.g.*, *Thomas v. Pingotti*, No. 9:17-CV-0300 (GTS/DEP), 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017) ("Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause.").

Finally, insofar as plaintiff challenges the reasonableness of the strip search policies more blanketly, Directive 4910 limits when DOCCS officials may conduct strip frisks to "specifically authorized" situations or "upon a finding of probable cause," limits the number of officials who may be present for such a search, and requires, in the absence of extenuating circumstances, that the search occur in a private location.  *See* IV.E.2.a; IV.G.  DOCCS Directive 4027 also prohibits corrections officers from conducting abusive searches and expressly requires any officer who witnesses an inappropriate search to report the misconduct.  *See* NY DOCCS, Directive No. 4027, *available at* https://doccs.ny.gov/system/ files/documents/2022/07/4027-public-.pdf (last visited May 1, 2023).

14

Plaintiff has failed to identify any less invasive manner of conducting searches or frisks that would maintain the security objectives that necessitate these actions in the first instance, or allege any facts which plausibly suggest that the practices articulated in the aforementioned Directives increase the likelihood of sexual assaults.  Moreover, as noted in the March 2023 Order, the Second Circuit has made clear that visual cavity searches are not per se unconstitutional.  *See* March 2023 Order at 8 (citing *Covino*, 967 F.2d at 78-79). Thus, plaintiff has also failed to adequately plead that the DOCCS strip and pat frisk policies for incarcerated males violates his Fourth or Eighth Amendment rights.

Accordingly, plaintiff's Section 1983 claims based on the DOCCS strip and pat frisk policies are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Section 1983 Claims Challenging Meal Policies

The Court stated as follows in the March 2023 Order with regard to plaintiff's challenges to DOCCS serving incarcerated males "quick chill" meals and soy bean products:

> With respect to plaintiff's allegations regarding food items that he prefers not to receive, the complaint is devoid of allegations which plausibly suggest that plaintiff has been denied nutritionally adequate meals, or forced to consume meals that present a known risk to his health.  Indeed, the complaint lacks any allegations which plausibly suggest that plaintiff (and other individuals in DOCCS' custody) have been or are being served food that is not available to the general public for consumption based on health and safety concerns. Furthermore, plaintiff's general concern that certain food items offered to him are "unhealthy" and "known" to present a risk of cancer is not enough to state an Eighth Amendment claim.  *See, e.g.*, *Mejia v. Goord*, No. 9:03-CV-124 (LEK/DEP), 2005 WL 2179422, at *6 (N.D.N.Y. Aug. 1[]6, 2005) (noting that "the Eighth Amendment does not elevate to constitutional significance an inmate's dislike for the food served or the portions received"); *Collado v. Sposato*, No. 12-CV-2151, 2012 WL 3113837, at *4 (E.D.N.Y. July 25, 2012) ("Preference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu."); *Mitchell v. N.Y. State Dep't of Corr. Servs.*, No. 6:06-CV-6278, 2012 WL 6204205,

at *12 (W.D.N.Y. Dec. 12, 2012) (dismissing as frivolous prisoner's claim that a soy-based diet causes cancer).

March 2023 Order at 9.

As with the original complaint, the amended complaint lacks any allegations which plausibly suggest that (1) quick chill meals and soy bean products are not available to the general public because of health and safety concerns, or (2) plaintiff is not allowed to refuse quick chill meals and/or meals containing soy bean products when they are offered to him, or would be deprived of a nutritionally adequate diet if he did so.  In addition, although the Court is not aware of any directive or court order that prohibits DOCCS from offering meals containing soy bean products to incarcerated females, even assuming this is true, as plaintiff alleges, in the absence of any allegations that plaintiff is not allowed to refuse meals containing soy bean products when they are offered to him, or would be deprived of a nutritionally adequate diet if he did so, the Court has no basis to plausibly infer that plaintiff is treated any differently than incarcerated females.  Furthermore, the amended complaint lacks allegations which plausibly suggest that there is no rational basis for the alleged difference in treatment.  *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987) (discussing the factors that should be considered in evaluating the reasonableness of a challenged prison regulation, which include "whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"); *Mathis v. Monza*, 530 F. App'x 124, 127-28 (3d Cir. 2013) (affirming dismissal of claim that the defendants violated plaintiff's equal protection rights "by serving hot meals to female RHU inmates while only serving bagged meals to male RHU inmates" because "[t]he record contain[ed] evidence that male RHU inmates used to receive hot meals, but that they began to use the trays and

16

utensils as weapons" and thus the "difference in treatment [bore] a 'valid rational connection'

to a legitimate and neutral government objective"); *Covino*, 967 F.2d at 78-79 (noting that

"[t]he burden is upon the prisoner to show that a challenged prison regulation is

unreasonable").

Accordingly, plaintiff's Section 1983 claims based on DOCCS policies related to

serving incarcerated males quick chill meals and meals containing soy bean products are

dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim

upon which relief may be granted.

### 4.  Section 1983 Claims Challenging Bus Transport Policy

The Court stated as follows in the March 2023 Order with regard to plaintiff's

challenge to the alleged bus transport policy within DOCCS:

> With respect to plaintiff's challenge to the alleged bus transport protocol, the
> complaint lacks allegations which plausibly suggest that plaintiff has ever
> suffered an injury as a result of the transport policy about which he
> complains.  Moreover, the complaint fails to address, in any respect, the
> security concerns associated with allowing inmates to be transported without
> restraints, and the Second Circuit has made clear that the failure to provide
> an inmate with a seatbelt during a transport does not, standing alone, give
> rise to a constitutional claim.  *See Jabbar v. Fischer*, 683 F.3d 54 (2d Cir.
> 2012) (per curiam).  Thus, plaintiff has failed to adequately plead that he has
> suffered (or is likely to suffer in the immediate future) a violation of his
> constitutional rights as a result of the alleged bus transport protocol.

March 2023 Order at 9-10.

Insofar as the amended complaint alleges that plaintiff suffered injuries during a bus

transport as a result of the DOCCS transport policy, plaintiff has not alleged when his injuries

occurred, or explained, in any detail, the nature of the injuries that he suffered.  Nor has

plaintiff explained how his injuries were suffered, *i.e.*, as a result of a vehicle accident, an

altercation with another inmate, or some other manner of applied force.  Thus, the Court has

17

no basis to plausibly infer that plaintiff suffered a cognizable constitutional violation, solely as a result of the DOCCS transport policy, within the applicable limitations period.

Insofar as the amended complaint seeks prospective injunctive relief related to the transport policy, as noted above, the Second Circuit has already made clear that transporting inmates without seatbelts is not, without more, a constitutional violation.  Furthermore, plaintiff has failed to identify any reasonable alternative available to prison authorities with respect to restraints that maintains obvious security concerns.  For example, plaintiff complains about inmates being ankle-shackled together and chained to a weight box during bus transports, but fails to acknowledge that removing these restrictions would almost certainly increase the potential for escapes and altercations between inmates while in transport.

Accordingly, plaintiff's Section 1983 claims based on the DOCCS bus transport policy are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### 5.  ADA and Rehabilitation Act Claims

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citation omitted).  The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* (citing 42 U.S.C. § 12132).[5]  Similarly, Section 504 of the Rehabilitation Act requires that "[n]o

---

[5]  A state prison is a "public entity" for purposes of the ADA.  *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Allah v. Goord*, 405 F. Supp. 2d 265, 279 (S.D.N.Y. 2005).

otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The Second Circuit has noted that "the standards under both statutes are generally the same." *Wright v. N.Y. State Dep't of Corr*., 831 F.3d 64, 72 (2d Cir. 2016).  Moreover, where, as here, the subtle distinctions between the statutes are not implicated, courts "'treat claims under the two statutes identically.'" *Id*. (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

"In order to establish a prima facie violation under these acts, [an inmate] must show that 1) he is a qualified individual with a disability; 2) DOCCS is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability." *Wright*, 831 F.3d at 72 (citing *Henrietta D.*, 331 F.3d at 272).

In this case, it appears plaintiff claims that he has been denied access to certain educational and rehabilitative programming, as well as mental health counseling, and experienced delays with accessing telephone and law library tablet privileges.  To the extent plaintiff alleges that he has been denied programming or experienced delays in accessing privileges, the amended complaint lacks allegations which plausibly suggest that any such deprivation occurred *because of* any of plaintiff's alleged mental health issues, or a failure to accommodate his disability.  Similarly, to the extent plaintiff alleges that he has been denied mental health counseling during his incarceration, the amended complaint lacks allegations which plausibly suggest that such treatment was not provided for discriminatory reasons.

19

Rather, the allegations in the amended complaint plausibly suggest that such treatment was not provided based on a determination that it was not needed.  *See, e.g.*, *Hall v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 12-CV-0377, 2015 WL 901010, at *3-6 (N.D.N.Y. Mar. 3, 2015) (dismissing ADA and Rehabilitation Act claims alleging disparate treatment and failure to reasonably accommodate the plaintiff's mental illness, where the plaintiff's denial of access to programs and services was based largely on his conviction of disciplinary offenses, the complaint failed to allege that "non-mentally-ill inmates convicted of a disciplinary offense and serving a sentence in SHU" received access to those programs, and the complaint largely complained of the adequacy of his mental health treatment rather than discrimination); *Roberts v. City of New York*, No. 14-CV-5198, 2016 WL 4146135, at *9 (S.D.N.Y. Aug. 2, 2016) (dismissing ADA and Rehabilitation Act claims where the plaintiff failed to allege that he "was excluded from participation in any program or activity, or otherwise treated differently, because of" his diabetes, and his claims sounded in medical malpractice rather than disability discrimination).[6]

Accordingly, plaintiff's ADA and Rehabilitation Act claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.[7]

### 6. Section 1983 Claims Based on Inadequate Medical and Mental Health Treatment

---

[6]  Insofar as plaintiff alleges that he may pursue claims against DOCCS for abuse and misuse of "economic resources" under the Rehabilitation Act, *see* Am. Compl. at 5-6, his claim is also dismissed because the amended complaint lacks allegations explaining how a misuse of resources caused plaintiff to suffer harm under the Rehabilitation Act.

[7]  To the extent plaintiff has asserted these claims against any named defendant in his or her individual capacity, these claims are also dismissed because "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."  *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976).  The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Id*.; *see Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia, Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104).  "First, the alleged deprivation must be, in objective terms, sufficiently serious."  *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted).  Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).[8]  "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that

---

[8]  Courts have found that "allegations of mental illness, especially when accompanied with suicidal ideation, state a plausible claim that [a] [p]laintiff's mental health needs were sufficiently serious." *Loadholt v. Lape*, No. 9:09-CV-0658, 2011 WL 1135934 (LEK/RFT), at *3 (N.D.N.Y. Mar. 3, 2011) (collecting cases), *report and recommendation adopted by* 2011 WL 1114253 (N.D.N.Y. Mar. 25, 2011).

21

the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety,"
*Farmer*, 511 U.S. at 837; *see Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)
(explaining, with respect to the subjective element, that a plaintiff must also demonstrate that
defendant had "the necessary level of culpability, shown by actions characterized by
'wantonness'").

To the extent plaintiff alleges that he has been denied mental health counseling
throughout his incarceration, including up to the filing date of the amended complaint, he has
failed to provide any details regarding the severity of his alleged mental disorders, or how
they affected his daily activities throughout his confinement (and while he was allegedly
medicated).  Thus, the Court has no basis to plausibly infer that plaintiff's identified mental
health conditions were sufficiently serious to necessitate some form of mental health
treatment in addition to his prescribed medication.

Moreover, even if the Court were willing to assume that plaintiff's identified mental
health conditions were sufficiently serious to necessitate some form of mental health
treatment, the amended complaint lacks allegations which plausibly suggest that plaintiff ever
requested such treatment or otherwise informed any medical professionals of any sort of
mental health complications that he was experiencing.  In addition, the amended complaint is
devoid of allegations which plausibly suggest that plaintiff's mental health issues adversely
impacted his daily activities in a way that was obvious.  Furthermore, it does not appear from
the allegations in the amended complaint that any of the officials named as defendants were
aware of, or responsible for, the medical treatment that plaintiff did or did not receive on a
daily basis.  *See, e.g.*, *Abreu v. Bascue*, No. 9:18-CV-0186 (MAD/ATB), 2018 WL 11466956,
at *8 (N.D.N.Y. May 1, 2018) ("Conclusory allegations that defendants were aware of a

22

plaintiff's medical needs and failed to provide adequate care are generally insufficient to state an Eighth Amendment claim of inadequate medical care." (collecting cases)).  Thus, the Court has no basis to plausibly infer from the allegations in the amended complaint that one or more officials named as a defendant denied plaintiff access to mental health services out of deliberate indifference to his serious medical needs.

Insofar as plaintiff alleges that he has been denied adequate medication to address his medical and mental health conditions and pain, the amended complaint lacks details regarding (1) what medications plaintiff has been prescribed, (2) when plaintiff has been prescribed these medications, (3) who prescribed plaintiff these medications or evaluated his medical complaints, and (4) how, if at all, plaintiff's daily activities were impacted by the medications he did or did not receive.[9]  Thus, the Court has no basis to plausibly infer from the allegations in the amended complaint that any DOCCS official named as a defendant denied plaintiff adequate medication out of deliberate indifference to his serious medical or mental health needs, let alone did so within the applicable limitations period.

Accordingly, plaintiff's Eighth Amendment claims based on inadequate medical and mental health services are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

### E.    Nature of the Dismissal

Based on the foregoing, plaintiff's amended complaint is dismissed pursuant to 28

---

[9]  Plaintiff vaguely alleges that at some unidentified point in time, he was prescribed an unidentified medication that "left him distorted and unable to move or understand anything." Am. Compl. at 12.  This is the only allegation in the amended complaint that explains how plaintiff suffered from prescribed medication. Moreover, plaintiff does not allege (1) when or why he was prescribed this medication, (2) how long he took it, (3) how, if at all, his condition worsened after he stopped taking the medication, (4) what medication, if any, he was subsequently prescribed, or (5) what, if anything, he advised medical professionals regarding the medication and his condition.

U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.  Although plaintiff was already afforded leave to amend his original complaint, the Court did not previously address the merits of his ADA, Rehabilitation Act, and Eighth Amendment medical and mental health care claims, and cannot "rule out any possibility" that an amended complaint might overcome the pleading deficiencies identified herein with respect to those claims.  *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  As a result, and in light of plaintiff's pro se status, the Court will afford him the opportunity to file a second amended complaint limited to allegations of wrongdoing associated with these claims as described in the amended complaint.[10]

Any amended complaint filed by plaintiff must bear his original signature, and must be a complete pleading.  Plaintiff is forewarned that, if he fails to submit a second amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

## III.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint is accepted for filing and is the operative

---

[10]   The Court declines to afford plaintiff the opportunity to submit a second amended complaint with respect to the other Section 1983 claims raised in the amended complaint because (1) plaintiff was already given an opportunity to cure the pleading deficiencies identified in the March 2023 Order with respect to these claims, and (2) it is clear to the Court that these deficiencies are substantive rather than merely formal such that any amendment would be futile. *See, e.g.*, *Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) ("Of course, granting a pro se plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 F. App'x 388 (2d Cir. 2009); *Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend.  The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend."); *Brown v. Peters*, No. 6:95-CV-1641 (RSP/DS), 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.").

pleading; and it is further

**ORDERED** that the Clerk shall add the following defendants to the docket:

(1) Philip Batitiste, DOCCS Director of Security; (2) Thomas Loughren, Commissioner for the New York State Commission of Correction; (3) Allen Riley, Commissioner for the New York State Commission of Correction; (4) Frances Sullivan, Policy and Complaint Review; (5) James O'Gorman, Commissioner of Facility Operations; (6) John Culkin, DOCCS Director of Mental Health Services; (7) John Morley, DOCCS Chief Medical Officer; (8) Stephen Brandow, Commissioner for Administration; (9) Jeff McKoy, Commissioner for Program Services; (10) Linda Hollmen, Director of Education; (11) Cathy Sheehan, RRU Programs; and (12) Anthony Annucci, DOCCS Commissioner; and it is further

**ORDERED** that plaintiff's Section 1983 claims seeking monetary relief against DOCCS and the named defendants in their official capacities are **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as barred by the Eleventh Amendment; and it is further

**ORDERED** that plaintiff's remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that, if plaintiff wishes to proceed with this action he must file a second amended complaint **within thirty (30) days** of the filing date of this Decision and Order, limited to the claims that were asserted for the first time in the amended complaint, as set forth above; and it is further

**ORDERED** that, upon the filing of a second amended complaint as directed above, the Clerk shall return the file to this Court for further review; and it is further

25

**ORDERED** that, in the event plaintiff fails to file a signed second amended complaint **within thirty (30) days** of the filing date of this Decision and Order, the Clerk shall enter judgment dismissing this action without prejudice for failure to state a claim upon which relief may be granted, and for failure to comply with the terms of this Decision and Order; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

May 8, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge

26